FAULKNER, Justice.
The issue before us is whether or not a court’s acceptance and ratification of a special master’s report should be upheld. We affirm.
The dispute arose over a contract for the construction of a new residential dwelling in Birmingham. Thomas L. Alexander, Jr. and his wife, Lola B. Alexander, entered into a contract with J. T. Dismukes, d/b/a Dismukes Construction Company, on October 30, 1972, for the construction of a new home. The work was to be done according to plans and specifications approved by the Alexanders. The price bargained for was $60,000, $5,000 of which was to be paid upon completion of the foundation and $15,000 upon completion of the roof.
Under the terms of the contract the builder, Dismukes, agreed to begin construction in thirty days and complete the house within six months. If financing were obtained through the FHA or VA, *163 which it was, the builder was required to complete the house in substantial compliance with the plans and specifications as approved or modified by the FHA or VA. Changes during the course of construction were to be in writing, signed by the builder and the buyers.
Although the contract was signed in October of 1972, the building permit was not obtained until April of 1973. Actual work on the house began shortly after April 30. During the course of construction the Alexanders paid Dismukes $20,500 for laying the foundation and putting up the roof. Dismukes finished work on the house in late October or early November, 1974; the last work on the heating and air conditioning was not completed until December. The Alexanders, not satisfied with the finished house, refused to pay Dismukes the balance on the contract price.
Litigation began when Dismukes filed a complaint on November 13, 1974, asking that a mechanics’ and materialmen’s lien be lodged against the property. Dismukes wanted a lien for $42,500, $39,500 due under the contract, plus $3,000 for “extras” that he installed allegedly at the Alexanders’ request.
The Alexanders answered and counterclaimed for $20,000 for failure to comply with the original contract, the plans, and the specifications. They listed twelve “deviations,” among them Dismukes’ failure to set the house the correct distance back from the boundary line, finishing construction twenty months behind schedule, and causing the Alexanders to incur additional interest charges. Dismukes’ response was that the delay was due to the Alexanders’ conduct and material shortages.
On February 26, 1976, the trial court, pursuant to Rule 53, A.R.C.P., appointed a special master to resolve the monetary dispute. The costs of the master’s services were to be included in court costs. That same day the master began hearing testimony and examining evidence; the oral hearing was completed by the afternoon of February 28. On March 2, the master personally inspected the subject premises. Four days later the master filed his report with the court, finding that the house was built in a good and workmanlike manner, and substantially conforming to the plans and specifications. Most of the delays were said to be the fault of the Alexanders and these offset the delays caused by Dis-mukes. The market value of the house was not dimfnished because of the slight deviations from the plans and specifications. In the master’s opinion, whatever error there was, was error without injury. Thus the counter-claim was denied. The master recommended a lien be granted in favor of Dismukes for $41,296.11, $39,500 due on the contract, plus $1,794.11 for certain specified “extras,” extra wall paper, electrical features, a higher garage door, and solid rather than hollow outside doors. Certain of Dismukes claims were barred because they were not in writing signed by both parties. It was suggested that the master’s fee of $1,000 be divided between the parties.
On March 17, the Alexanders filed objections to the master’s report, and eight days later amended their objections. The thrust of the objections was that the house was in fact located nine feet closer to the street than called for in the plans. This, they contend, could not be deemed substantial compliance by the master; furthermore, the master failed to consider ordering specific performance.
A hearing on the objections was set for April 1. On April 3, the court entered a final decree confirming, ratifying, and accepting the master’s report. After their motion to set aside the decree and grant a rehearing was denied, the Alexanders perfected this appeal.
The Alexanders first argue that neither the form nor the content of the master’s report meets the requirements of Rule 53(e)(1), A.R.C.P., reading in part: “He shall file the report with the clerk of the *164 court in an action to be tried without a jury, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits.”
The proceedings before the master were recorded, but not transcribed until after the final decree. No transcript of the evidence was filed.
As the Alexanders state in brief, there is a dearth of Alabama law on the subject. For guidance we must turn to the decisions interpreting the corresponding Federal Rule of Civil Procedure. The Alexanders submit that In Re Maggioli Co., 3 F.R.D. 83 (D.C.1943) gives the clearest indication of how the federal courts have interpreted Rule 53(e) (1). We agree that In Re Mag-gioli is to be the guide. There the master in a bankruptcy proceeding failed to file with his report a transcript of the proceedings and of the evidence and omitted filing the original exhibits. The creditors alleged that this was a violation of Rule 53(e)(1). Since Rule 80(a) F.R.C.P. providing for the appointment of a stenographer was extant, and not abrogated until 1946, the court stated that it was the master’s duty to propose the appointment of a stenographer and attempt to collect the initial cost. A transcript must be prepared so that the trial judge can rule intelligently on the master’s report and determine if the master has erred. The court further ruled that the master’s report could stand without imposing the requirement of filing a transcript of the evidence. “To do otherwise would allow the petitioners to take advantage of their own failure to make a seasonable objection to the master’s neglect in performing his duties.”
In the case at hand there was a reported present recording the testimony offered before the special master. The Alexanders knew that the proceedings were being recorded, yet they did not list the lack of a transcript of the evidence with their other objections to the master’s report. They did not argue this at the hearing on the objections to the master’s report. It was not until they filed their motion to set aside the decree and grant a rehearing did they register their objection to the lack of a transcript. For this reason they cannot now complain that a transcript of the evidence was not filed with the trial judge. Any objections are to be deemed waived; the form of the master’s report is acceptable.
The content of the master’s report is to be accepted, under Rule 53(e), A.R. C.P. unless the findings of fact are “clearly erroneous.” We do not think they are. There was evidence properly in the record, testimony by appraisers and expert witnesses, to show that the market value of the house was more than the contract price. The evidence admitted to show amelioration of the property could certainly be used by the master to calculate the value of the “extras” installed. We opine that the master did not err in his conclusions of law. There was ample evidence to support his conclusion that the finished house was in substantial conformity with the plans and specifications and that the Alexanders’ counter-claim for damages was not well taken.
We cannot say that the findings of fact are “clearly erroneous” or that the conclusions of law are in error.
The decison is due to be affirmed.
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.